PUBLIC RELATIONS AIDS, INC., Respondent-Appellant, *v.* HYMEN V. WAGNER et al., Appellants-Respondents.

First Department, October 12, 1971.

*Alfred B. Engelberg* of counsel (*Stanley J. Yavner* with him on the brief; *Amster & Rothstein,* attorneys), for respondent-appellant.

*Alvin I. Goidel* of counsel (*Ben Charles Asher,* by *Goidel & Goidel,* attorneys), for appellants-respondents.

STEVENS, P. J. Defendants appeal and plaintiff cross-appeals from an order and interlocutory judgment, entered May 21, 1971, after a trial on the issue of liability only (KUPFERMAN, J.) which granted an injunction against defendants and directed a reference on the issue of money damages. Defendants' primary base of appeal is that the injunction, as granted, was unwarranted. Plaintiff appeals to the extent that additional injunctive relief sought was denied and urges that the court applied the wrong legal standard and reached an erroneous result in its finding of no trade secrets.

According to plaintiff Public Relations Aids, Inc. (hereinafter PRA) defendant Wagner was employed by it in February, 1959, as its sales manager, later becoming vice-president in charge of client relations. PRA is engaged in the public relations field and Wagner, prior to the commencement of his employment, had worked in the public relations industry for 10 years. In early 1964 Wagner terminated his employment with PRA and thereafter formed his own firm, defendant Media Distribution Service, Inc. (hereinafter MDS). PRA and MDS

are both engaged in disseminating information for customers to specialized media and are competitors.

On or about August, 1964 PRA commenced this action against Wagner and MDS, charging them with misappropriation of trade secrets and confidential information in breach of Wagner's fiduciary duty and confidential relationship as a former employee of PRA. PRA developed what the trial court termed " a sophisticated approach " involving a selective system or program to satisfy the needs of its customers. The system was developed by programming an Addressograph machine in conjunction with the use of numerical classification of media information found to be readily available. The program for the Addessograph used the absence of tabs as well as the presence of tabs to represent classifications. However, the machine (1900 Addressograph) was used without modifications, alterations or changes to the machine itself, or changes in the coding bar, the positive or reverse pins or the method of operating the machine. The plates and tabs used were standard. Defendants term the operation of both PRA and MDS as a " Letter Shop ", operated on a mechanical basis.

At the time of the initial employment by PRA of Wagner the parties executed a contract which contained certain restrictive provisions. This contract was terminated by a written agreement dated October 22, 1962, though Wagner remained in plaintiff's employ until January 31, 1964.

Testimony at the trial indicated that salesmen, account executives, and possibly checkers were briefed on the operation of PRA's system, though only Wagner and two others had ever executed a contract of employment. The object was to prepare the salesmen to foresee " all consequences of any type of order a customer could submit ", and to be able to advise the customer or prospect accordingly. The catalogs prepared by PRA and MDS contain generic designations or categories related to specific matter and are distributed by each to customers and prospective customers. Directions appear in the catalogs and by following such directions the customer or prospect causes certain categories to be checked so that information which it desires to be transmitted can be sent to select firms or individuals. PRA has approximately 8,000 categories, and MDS approximately 2,000 categories.

In order to restrain Wagner and MDS from competing with plaintiff it should appear that there is either a breach of a contractual agreement not to do so, or that there is a breach of a fiduciary obligation by Wagner.

As noted, the agreement which Wagner executed when he entered upon his employment with PRA was abrogated by mutual consent on October 22, 1962, and there is no claim that any other agreement of restriction or prohibition was ever entered thereafter between the parties. A previous motion by PRA for summary judgment had been denied, which denial was affirmed by this court upon appeal. (34 A D 2d 738.)

In the trial the court refused to find that PRA's coding and mechanical system is a trade secret warranting protection. Nor did the court find the system to be an essential ingredient of defendants' competition. We agree. The facts indicate that PRA's mailing lists and lists of its customers were not secrets. In fact plaintiff's brochures and releases, issued prior to the trial, and some even before Wagner terminated his employment, boasted of some of its well-known customers. The names of such customers would be well known to any one in the business of public relations, and any list of prospects could be easily and readily compiled from various available sources. This case can be distinguished from Town & Country Serv. v. Newberry (3 N Y 2d 554) with respect to lists of customers. In the cited case the employer's list of customers had been screened at considerable effort and expense. They " could not be obtained merely by looking up their names in the telephone or city directory or by going to any advertised locations " (p. 559). Moreover, defendants in that case solicited only the employer's customers whose names would not have been readily or equally available to them but for their prior employment.

Additionally, PRA's method of operation was not closely restricted or kept secret from its employees, or even all but a selected few to whom it might have been necessary to reveal the procedure. The court characterized PRA's method of operation as " ingenious " but did not find that such method constituted a trade secret.

There was nothing in the nature or extent of Wagner's employment which established a relationship which might fairly be termed a fiduciary relationship or which created a fiduciary obligation. The mere fact of prior employment would not in and of itself bar defendants from competing with a former employer in the absence of an agreement not to do so. The system and the retrieval program and their relationship with the catalog do not, in the facts as they appear, constitute trade secrets and the court so found. The customers serviced by the parties are well known, are in advertised locations and are of a kind which would be interested in the service offered by PRA and MDS (cf. Town & Country Serv. v. Newberry, supra). The

abrogation of Wagner's contract which contained restrictions throws some light on how PRA itself considered what it now claims are trade secrets.

The order appealed from should be modified on the law and the facts to deny injunctive relief and damages, and the delivery of lists, to vacate the reference, and to dismiss the complaint herein. As so modified, the order appealed from should otherwise be affirmed, without costs to either party.

CAPOZZOLI, McGIVERN, MARKEWICH and NUNEZ, JJ., concur.

Order, Supreme Court, New York County, entered on May 21, 1971, unanimously modified, on the law and the facts, to deny injunctive relief and damages, and the delivery of lists, to vacate the reference, and to dismiss the complaint herein, and, as so modified, affirmed, without costs and without disbursements.