James K. GILSON, Plaintiff,

v.

The REPUBLIC OF IRELAND, et al., Defendants.

Civ. A. No. 79–2647.

United States District Court, District of Columbia.

June 29, 1981.

478

Sheldon Z. Kaplan, Joseph H. Sharlitt, Washington, D. C., for plaintiff.

J. P. Janetatos, Baker & McKenzie, Edward A. McDermott, William A. Bradford, Jr., Washington, D. C., for defendants.

MEMORANDUM OPINION

NORMA HOLLOWAY JOHNSON, District Judge.

This matter is before the Court upon the motion of defendants Gaeltarra Eireann, Leictron Teoranta, and Industrial Development Authority to dismiss the complaint, the parties' cross-motions for summary judgment and the defendant Republic of Ireland's second motion for summary judgment. In this action brought pursuant to the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602, *et seq.*, all four defendants have invoked the defense of sovereign immunity. For the reasons more fully set forth below, the Court finds it lacks subject matter jurisdiction over this action as to defendants Leictron Teoranta, Industrial Development Authority, and the Republic of Ireland. In addition, the Court finds it lacks personal jurisdiction over defendant Gaeltarra Eireann. Accordingly,

the complaint against all defendants to this action must be dismissed with prejudice.

## BACKGROUND OF THE LITIGATION

The amended complaint[1] in this action was filed in January 1980, and names as defendants, the Republic of Ireland (Ireland), Gaeltarra Eireann (GE) and Leictron Teoranta (LT), both as instrumentalities of the Republic of Ireland, and Industrial Development Authority of Ireland (IDA), as a political subdivision and instrumentality of the Republic of Ireland. Jurisdiction is averred to be based on 28 U.S.C. § 1330 and 28 U.S.C. § 1602, et seq., the Foreign Sovereign Immunities Act of 1976. The plaintiff, a mechanical engineer, alleges that defendants GE and IDA induced him to enter into a commercial venture for the development of quartz crystals in Ireland, to move himself, his family, equipment, technology to Ireland, and to reveal to defendants certain proprietary information. The complaint further contends that subsequent to the plaintiff's move to Ireland, defendant GE breached its contract with plaintiff, turned over to defendant LT his patent rights and proprietary information, and along with LT, converted his equipment to their own use. Plaintiff also alleges the interference by defendants GE and LT with his ongoing contractual relations with another Irish corporation. The complaint charges that defendant Republic of Ireland is liable to plaintiff for the acts of the agents of the other defendants because such acts were allegedly committed within their scope of employment by Ireland. The plaintiff seeks damages in an amount totalling three million dollars, in addition to an accounting by defendants GE and LT for all revenues inured to them by virtue of their wrongful conduct.

Through motions to dismiss and for summary judgment the defendants, inter alia, raise the defenses of sovereign immunity and the statute of limitations. Because the Court finds it lacks jurisdiction over this matter under the Foreign Sovereign Immunities Act, the Court makes no findings as to the other issues raised by the parties.

1. The original complaint was filed October 3, 1979.

## DISCUSSION

The stated purpose of the Foreign Sovereign Immunities Act of 1976 is:

to provide when and how parties can maintain a lawsuit against a foreign state or its entities in the courts of the United States and to provide when a foreign state is entitled to sovereign immunity.

H.R. Rep. No. 94–1487, 94th Cong., 2d Sess. 6 (1976), reprinted in [1976] U.S. Code Cong. & Admin.News, p. 6604–6635 (House Report). The Act is designed to codify the restrictive principle of sovereign immunity that makes a foreign state amenable to suit for the consequences of its commercial or private acts, as opposed to its public or governmental acts. Also, a principal purpose of the Act is:

to transfer the determination of sovereign immunity from the executive branch to the judicial branch, thereby reducing the foreign policy implications of immunity determinations and assuring litigants that these often crucial decisions are made on purely legal grounds and under procedures that insure due process.

House Report, supra at 7, U.S. Code Cong. & Admin.News 1976, p. 6606. The FSIA added section 1330 to Title 28 of the United States Code to provide district courts with both subject matter and personal jurisdiction over nonjury civil actions that involve claims against foreign states that are not entitled to immunity under 28 U.S.C. §§ 1605–07, or under any international agreement. Title 28 U.S.C. § 1330 provides:

(a) The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement.

(b) Personal jurisdiction over a foreign state shall exist as to every claim for

relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title.

(c) For purposes of subsection (b), an appearance by a foreign state does not confer personal jurisdiction with respect to any claim for relief not arising out of any transaction or occurrence enumerated in sections 1605–1607 of this title.

The Act thereby creates an identity of substance and procedure; that is, it requires the court to examine the underlying claim in light of the immunity exceptions set forth in sections 1605–1607 whenever a jurisdictional defense of sovereign immunity is interposed. *Upton v. Empire of Iran*, 459 F.Supp. 264, 265 (D.D.C.1978); *Yessenin-Volpin v. Navosti Press Agency*, 443 F.Supp. 849, 851 (S.D.N.Y.1978).

 The initial inquiry to be made is whether the entities sued in this case may be classified as foreign states within the meaning of 28 U.S.C. § 1603, entitling them to invoke the protection of the FSIA. Section 1603 of the FSIA states:

(a) A 'foreign state' ... includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).

(b) An 'agency or instrumentality of a foreign state' means any entity—

(1) which is a separate legal person, corporate or otherwise, and

(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country.

Pursuant to these provisions, all four defendants in this case are foreign states. There is no question as to this status of the Republic of Ireland. Defendants Gaeltarra

Eireann [2] and Industrial Development Authority are corporate instrumentalities of Ireland, having been created by legislation. Leictron Teoranta is a corporate entity organized under the laws of Ireland. These three defendants are separate legal persons, owned in whole or in substantial part by Ireland, and are capable of suing or being sued in their corporate names. It is undisputed between the parties that all defendants are foreign states within the meaning of section 1603.

All defendants in this action have interposed the defense of sovereign immunity. The validity of this defense is dependent upon the Court's classification of the cause of action. If the claims alleged by Gilson as to the various defendants fall within the exceptions to immunity set out in the Act, the Court has subject matter jurisdiction over those claims.

Section 1605 of the FSIA provides in pertinent part: [3]

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

(2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

The FSIA states in section 1603:

(d) A 'commercial activity' means either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.

---

2. Gaeltarra Eireann was dissolved in January 1980. The successor entity is Udaras na Gaeltachta.

3. Plaintiff bases his claim upon this section of the Act.

(e) A 'commercial activity carried on in the United States by a foreign state' means commercial activity carried on by such state and having substantial contact with the United States.

The legislative history of the FSIA provides further insight into the meaning of commercial activity stating that,

a 'regular course of commercial conduct' includes the carrying on of a commercial enterprise such as a mineral extraction company, an airline or a state trading corporation. Certainly, if an activity is customarily carried on for profit, its commercial nature could be readily assumed. At the other end of the spectrum, a single contract, if of the same character as a contract which might be made by a private person, could constitute a 'particular transaction or act'.

House Report, *supra*, at 16, U.S.Code Cong. & Admin.News 1976, p. 6614.

The plaintiff has asserted that this Court has subject matter jurisdiction, as well as personal jurisdiction, over all the defendants pursuant to section 1605(a)(2). Moreover, the plaintiff claims that all of the provisions of that section apply to this case. It is against these claims that the Court will examine the stated causes of actions as to each defendant to determine if the sovereign immunity defenses have been properly invoked.

*Leictron Teoranta*

■ The plaintiff alleges LT was the immediate recipient of all of the benefits of the breach of contract, deceit, infringement, and conversion asserted in the complaint, and the initiating party of the interference with his advantageous relations. Gilson contends that by virtue of its legal status as a foreign state, jurisdiction over LT is established. Count Four of the complaint alleges that LT is liable to Gilson for the unlawful use of his patent rights and proprietary information, and seeks an accounting by LT. Count Five states LT, along

with defendants GE and Ireland, converted to their own use all of plaintiff's equipment in Ireland, and Count Six claims the interference by LT (and GE and Ireland) with Gilson's ongoing contractual relations with GAT.[4] Absent from the complaint, however, is any allegation or indication that LT engaged in any commercial activity within the United States. All of the claimed unlawful conduct of LT allegedly occurred in Ireland. Under these circumstances, the first two clauses of section 1605(a)(2) clearly do not apply to this defendant. Furthermore, the plaintiff has not alleged any direct effects to him in the United States as a consequence of LT's activities in Ireland.[5] It would appear that any effect upon plaintiff from the alleged wrongful conduct took place in Ireland. Upon consideration of the facts and allegations presented in the complaint, and pursuant to the Foreign Sovereign Immunities Act of 1976, the Court finds that it lacks subject matter jurisdiction over defendant Leictron Teoranta. Accordingly, the complaint as to LT must be dismissed.

*Industrial Development Authority of Ireland*

The complaint at paragraph 2(d) alleges that IDA is an agent of Ireland, charged by law with carrying on commercial activity which embraces encouragement of industrial development in Ireland and the encouragement of investors to invest in new manufacturing facilities in Ireland. The essence of plaintiff's allegations against IDA is that it, along with GE which is variously characterized as IDA's affiliate and successor in effort, made certain representations to plaintiff in the United States by the use of the U.S. mails and of interstate and intrastate telephone and telegraph facilities. It is claimed that as a result of these representations, plaintiff was induced to move to Ireland. In Count One of the complaint, the only count charging defend-

---

**4.** GAT is an Irish corporation, not a party to this action, with which the defendant GE contracted and the plaintiff and an associate helped to form.

**5.** As to his claims against the other defendants, Gilson argues as direct effects, defendants' inducement of him to travel to Ireland.

ant IDA with wrongful conduct, the plaintiff alleges deceit in that the representations made by IDA and GE were false when made and that defendant GE never intended that they were to be fulfilled.

The plaintiff argues IDA is not immune from liability because of its and other defendants' "methodical attempt carried out within the United States to induce an American to expatriate himself, his family, his technology and his equipment, and bring them all to Ireland." Gilson alleges a contract was entered into within the United States for the purpose of commercial transfer of American technology abroad, and it is this "unique" jurisdictional fact that gives this Court subject matter jurisdiction over his claims. Throughout the complaint the plaintiff imputes the alleged breach of contract and subsequent actions by defendant GE, to IDA. However, there is nothing presented in the complaint or the record before the Court which suggests that IDA can be held liable for the actions of GE.[6] To the contrary, IDA has submitted the affidavit of Paddy Long, Secretary of the IDA, which states:

> The IDA encourages investors located outside of Ireland to invest in the country and also encourages the expansion and development of industry within Ireland. By contrast, GE has responsibility only for certain Gaelic-speaking geographical areas in Ireland. While IDA, as a courtesy, will refer projects to GE from time to time, the IDA is not GE's agent or representative. GE is an independent entity.

Moreover, even if there were a contract formed prior to plaintiff's move to Ireland, the evidence presented by plaintiff relates *solely* to communications between him and defendant GE. Thus, the Court in examining this claim as to IDA, in light of the immunity exceptions in the Act, must look to the actions of IDA only.

In his opposition to the motion to dismiss filed by IDA, GE, and LT, the plaintiff often fails to make crucial distinctions between the activities of the various defendants, instead urging that all were engaged in commercial activity in the United States, so to fall within the first clause of section 1605(a)(2). The requirements of that clause are clear: commercial activity in this context means commercial activity carried on by such [foreign] state and having substantial contact with the United States. 28 U.S.C. § 1603(e). All plaintiff alleges of IDA is that it maintains an office in New York from which it made representations to him by the use of the U.S. mails, telephone, and telegraph. As required by the FSIA, the commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose. 28 U.S.C. § 1603(d). The allegations of the complaint are not sufficient to establish that IDA was engaged in commercial activity having substantial contact with the United States. Thus the Court finds defendant IDA does not come within the immunity exception of the first clause of section 1605(a)(2).

Nor is the second clause of section 1605(a)(2) of any value to plaintiff in establishing jurisdiction over IDA. The legislative history states that this clause expressly provides

> . . . for the case where a claim arises out of a specific act in the United States which is commercial or private in nature and which relates to a commercial activity abroad. It should be noted that the acts (or omissions) encompassed in this category are limited to those which in and of themselves are sufficient to form the basis of a cause of action.

House Report, *supra* at 19, U.S.Code Cong. & Admin.News 1976, p. 6619. Plaintiff alleges the operative act of IDA consisted of the use of mails to make representations to him. The commercial nature of this act is questionable, in light of defendant's evidence that IDA sought to assist Gilson in the development of a proposal. Assuming

---

**6.** The plaintiff does allege Ireland is responsible for GE's acts under the doctrine of respondeat superior.

*arguendo* that IDA's representations to plaintiff constituted an act in connection with commercial activity abroad, the representations are not in and of themselves sufficient to form the basis of a cause of action. The gravamen of plaintiff's complaint is that defendant GE, not IDA, failed to live up to such representations. The Court has heretofore determined that IDA cannot be liable for the acts or omissions of GE. The complaint alleges no act on the part of IDA which can form the basis of a cause of action pursuant to the second clause of section 1605(a)(2). See generally, *East Europe Domestic International Sales Corp. v. Terra,* 467 F.Supp. 383 (S.D.N.Y. 1979), aff'd, 610 F.2d 806 (2d Cir. 1979).

As to clause three of section 1605(a)(2), in the face of IDA's defense of sovereign immunity, the plaintiff fails to allege any acts committed by IDA outside of the United States in connection with a commercial activity elsewhere, which caused a direct effect in the United States. Again, Gilson fails to make a distinction between the alleged acts of IDA and those of the other defendants, most notably GE. The allegations of the complaint are devoid of anything upon which this Court could find subject matter jurisdiction over IDA pursuant to the third clause of section 1605(a)(2). Based upon the foregoing, the complaint will be dismissed as to defendant Industrial Development Authority of Ireland.

*Gaeltarra Eireann*

The complaint alleges jurisdiction over defendant GE on the basis of its commercial activity within the United States, acts performed by it in the United States in connection with a commercial activity in Ireland, and acts performed by it outside the United States in connection with planned commercial activity in Ireland, causing a direct effect in the United States. The actions by GE, as alleged by Gilson, were the use of U.S. mails, telegraph, and telephone to communicate with plaintiff in the United States, such communications making up the contract under which the plaintiff acted to his detriment. The plaintiff further asserts that GE made representations to him while he was in the United States on which he relied and which resulted in the unjust enrichment of GE. Count One charges GE with deceit, Count Two with breach of contract, while Count Three asks for an accounting by GE for the use of patent rights and proprietary information. Count Five alleges the conversion by GE of plaintiff's equipment and Count Six claims an interference with advantageous relations. Gilson asserts that GE engaged in commercial activity by entering into a transaction calling for the transport of his expertise, equipment, and services to Ireland. He also characterizes this transaction as a "purchase of American technology, equipment, and personal services by an Irish company," presumably GAT, which GE had contracted to create. Gilson contends that the defendants went into the American market for the above-stated services, successfully securing them there and bringing them to Ireland.

■ Upon consideration of the allegations of the complaint and the arguments of the parties, the Court finds that this action is not based upon commercial activity carried on in the United States by GE. Communications by GE through the mails, telephone, or telegraph is not commercial activity having a substantial contact with the United States. *East Europe Domestic International Sales Corp. v. Terra, supra.* The complaint does not allege any contact by GE with the United States, other than contact with the plaintiff. There is nothing presented in the record before the Court which would tend to establish that GE was engaged in commercial activity within the United States, and within the meaning of this term in the FSIA. The definition [of commercial activity] is intended to reflect a degree of contact beyond that occasioned simply by U.S. citizenship or U.S. residence of the plaintiff. House Report, *supra* at 17. The commercial activity relied upon by plaintiff occurred outside of the United States.

The Court further finds the plaintiff has failed to establish jurisdiction over defendant GE pursuant to the third clause of section 1605(a)(2), since there has been no

direct effect in the United States caused by acts taken by GE in connection with a commercial activity elsewhere. The plaintiff alleges the direct effect in the United States caused by defendants was the "inducement" of him to move to Ireland through "tortious representations", and the "loss" of equipment and technology located in the United States. However, any injury or loss occurring to plaintiff occurred not in the United States, but in Ireland, where plaintiff alleges GE converted his equipment, interfered with his advantageous relationships, and breached his contract. Assuming *arguendo* that the inducement of which plaintiff complains can be considered an effect of defendant's actions, the complaint fails to allege what acts were performed outside the U.S. which caused the "direct effect" in the U.S. Indeed, at paragraph 4(b) and (c) of the complaint, it is alleged that GE's representations were made within the United States. Paragraph 4(d) purports to allege acts outside the U.S. which resulted in the inducement, but fails to specify which acts are at issue. Plaintiff has thus failed to establish a jurisdictional basis on clause three of section 1602(a)(5).

There remains the allegation that defendant GE performed an act in the United States in connection with commercial activity elsewhere. As heretofore stated, the act in this context must be commercial in nature. The plaintiff asserts GE used the U.S. mails, telephone, and telegraph to communicate with him in the United States and that such communications made up the contract under which he acted to his detriment.[7] Gilson also contends GE made representations to him on which he relied and which resulted in the unjust enrichment of GE.

If in fact a contract were formed between GE and Gilson, under certain circumstances, such a transaction could be sufficient for the Court to exercise subject matter jurisdiction over GE finding GE's act brings it within the exceptions to sovereign immunity. However, the Court must also find it has personal jurisdiction over the defendant. *Thomas P. Gonzalez Corporation v. Consejo National De Produccion De Costa Rica*, 614 F.2d 1247, 1255, (9th Cir. 1980). The legislative history of 28 U.S.C. § 1330 states that section 1330(b) provides, in effect, a Federal long-arm statute over foreign states. It is patterned after the District of Columbia long-arm statute, and embodies the requirements of minimum jurisdictional contacts and adequate notice. House Report, *supra* at 13. Assuming that subject matter jurisdiction exists, the Court finds it lacks personal jurisdiction over defendant GE because GE's relationship with the forum, the United States, does not establish the requisite minimum contacts for the Court to exercise personal jurisdiction.

The Court has found already that GE was not engaged in commercial activity in the United States. Nowhere is it alleged that GE's contacts with the forum were other than with the plaintiff. These contacts must be evaluated qualitatively rather than quantitatively, and the analysis must consider whether the contacts were voluntary and deliberate, rather than fortuitous. See *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). It is also essential that there be some act by which GE has purposely availed itself of the privilege of conducting activities in the United States, thus invoking the benefits and protections of its laws. *Hanson v. Denckla, supra* at 253, 78 S.Ct. at 1239.

■ Although the plaintiff argues that GE entered the American marketplace to secure American technology, there is nothing contained in the allegations of the complaint which supports such a proposition. What GE appears to have done was to communicate by mail or telex to plaintiff, who happened to be located in the United States. GE did not deliberately attempt to associate itself with the United States and to avail itself of the benefits and protec-

7. The defendant denies the communications formed a contract.

tions of U.S. laws.[8] Even if, as Gilson alleges, a contract was formed, performance was to take place in Ireland.[9] In sum, the defendant Gaeltarra Eireann did not have sufficient minimum contacts with the United States for the Court to exercise personal jurisdiction over it pursuant to 28 U.S.C. § 1330 of the Foreign Sovereign Immunities Act.

### Republic of Ireland

 The complaint fails to allege any independent acts committed by the Republic of Ireland, but instead under the doctrine of *respondeat superior*, charges that Ireland is liable for the acts of the agents of the other defendants who were acting within the scope of their employment by Ireland. Because the defendants Gaeltarra Eireann, Industrial Development Authority of Ireland, and Leichtron Teoranta are dismissed from this action, the Republic of Ireland must also be dismissed. Further, since the complaint contains no allegations which would bring Ireland within the sovereign immunity exceptions of section 1605(a)(2), or otherwise, Ireland's defense on this basis is upheld. Also, section 1605(a)(5)(B) provides additional grounds for the dismissal of certain counts of the complaint against Ireland, since this section precludes *respondeat superior* liability and permits sovereign immunity for actions based upon deceit (Count One) and interference with contract rights (Count Six), and provides only for such liability for acts committed in the United States (conversion alleged in Count Five occurred in Ireland).

Based upon the foregoing, the Court finds the complaint in this action must be dismissed as to all defendants. An order consistent with this opinion will be entered this date.[10]

---

**8.** It is clear from a reading of plaintiff's exhibits that any transaction between him and GE was to be governed by Irish law.

**9.** Plaintiff's reliance on *Mouzavires v. Baxter*, (Nos. 11696–97, D.C.App., February 6, 1980) is misplaced, since the Court there found signifi-

cant the fact that the contract was to be performed in the District of Columbia.

**10.** The Court makes no finding on the parties' cross-motions for summary judgment and the same will be denied as moot.