**James K. GILSON, Plaintiff,**

**v.**

**The REPUBLIC OF IRELAND, et al., Defendants.**

**Civ. A. No. 79–2647.**

United States District Court, District of Columbia.

June 28, 1984.

Joseph H. Sharlitt, Freedman, Levy, Kroll & Simonds, Washington, D.C., for plaintiff.

J.P. Janetatos, Baker & McKenzie, Edward A. McDermott, William A. Bradford, Jr., Washington, D.C., for defendants.

## MEMORANDUM OPINION

NORMA HOLLOWAY JOHNSON, District Judge.

This case is now before the Court on remand from the Court of Appeals for the District of Columbia Circuit for further proceedings and additional fact-finding on the third and fourth counts of the complaint. *Gilson v. Republic of Ireland,* 682 F.2d 1022 (D.C.Cir.1982) affirming in part and reversing in part 517 F.Supp. 477 (1981). After engaging in further discovery and other proceedings, defendants moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (F.R.C.P.). Plaintiff opposes the motion of each defendant. From a careful review of the pleadings, affidavits, depositions, and the entire record, the Court finds that there are no material facts in genuine dispute and defendants are entitled to judgment on counts three and four of plaintiff's complaint as a matter of law. Accordingly, the motions of Gaeltarra Eireann (GE), Leictron Teoranta (Leictron), Industrial Development Authority (IDA), and the Republic of Ireland for summary judgment are granted.

## BACKGROUND

Counts three and four of plaintiff's complaint are denominated, respectively: "Accounting by Defendant Gaeltarra Eireann for Use of Patent Rights and Proprietary Information" and "Accounting by Defendant Leictron for Unlawful Use of Patent Rights and Proprietary Information." The gravamen of these counts is that GE turned over to defendant Leictron the use of patent rights owned by plaintiff in contravention of the laws of both the United States and Ireland. Plaintiff further alleges that Leictron not only used and infringed these rights but also benefited from the usurpation of the patent rights with the active collusion of GE. Plaintiff also alleges that GE unlawfully turned over to Leictron his proprietary information regarding the growing, cutting, and finishing of quartz crystals. Plaintiff again asserts that Leictron benefited from its misappropriation of this proprietary information with the active collusion of GE. Thus, the substance of plaintiff's claims in counts three and four is that defendants GE and Leictron 1) unlawfully used and infringed his patent rights and 2) misappropriated trade secrets plaintiff allegedly possesses in the manufacturing of quartz crystal.*

## DISCUSSION

The function of a court when ruling on a motion for summary judgment is to determine whether there are any material facts in genuine dispute, and any doubt or uncertainty about the presence of triable issues of fact must be resolved against the party moving for summary judgment. *See* F.R.C.P. Rule 56; *Abraham v. Graphic Arts International Union,* 660 F.2d 811 (D.C. Cir.1981); *Gray v. Greyhound Lines, East,* 545 F.2d 169 (D.C.Cir.1976): *United States v. General Motors Corp.,* 518 F.2d 420

---

\* The complaint alleges that all four defendants were "continuously involved in the counts brought."

(D.C.Cir.1975). However, where a party moving for summary judgment has met this burden, an opposing party cannot rest on the mere allegations of his pleadings. Rather, he must present contravening evidence sufficient to create a genuine dispute of a material fact. *See e.g., Smith v. Saxbe,* 562 F.2d 729 (D.C.Cir.1977); *Merit Motors, Inc. v. Chrysler Corp.,* 417 F.Supp. 263 (D.D.C.1976), *aff'd* 569 F.2d 666 (D.C.Cir.1977). It is with these principles in mind that the Court concludes that the motions of defendants for summary judgment on Counts three and four of plaintiff's complaint should be granted.

In the chief argument of defendants GE, Leictron, and IDA for summary judgment, in which the Republic of Ireland joins, defendants do not challenge this Court's subject matter jurisdiction under the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1602 *et seq.* (1982 ed.), and personal jurisdiction over all defendants. Rather, defendants maintain that plaintiff neither possesses any proprietary rights in the patent that is the subject of his patent claim nor any information rising to the level of a trade secret. Thus, defendants argue that plaintiff lacks standing to bring an action for unlawful use and infringement of the patent and misappropriation of trade secrets.

Patent Claims

The material and uncontroverted facts in this case substantiate that plaintiff James K. Gilson is one of four inventors of U.S. Patent No. 3,183,063 covering the growing of quartz crystals by autoclave technology. Plaintiff and his co-inventors, however, assigned the patent to Western Electric Company, Inc., their employer at the time Patent No. 3,183,063 was issued. Indeed, the patent recites that plaintiff and the other three inventors are "assignors to Western Electric Company, Incorporated." Western Electric, in turn, granted plaintiff and the other inventors a royalty-exempt license to Patent No. 3,183,063. Thus, the question of law for the Court to resolve is whether plaintiff either retained or received a pro-

prietary right in Patent No. 3,183,063 to invoke the protection of U.S. patent laws.

■ Plaintiff maintains that defendants are not entitled to summary judgment on the patent claims notwithstanding the assignment of the patent to Western Electric, for he still has a legal interest in the patent as a licensee, and his interest is *per se* subject to trade secret protection. Plaintiff appears to confuse, however, a claim for patent protection with a claim for trade secret protection. The distinctions between patent and trade secret claims are not illusory. For example, any rights plaintiff may possess in the patent are conferred and defined by the patent laws of the United States and as such, are a matter of federal law. To the contrary, a party seeking to protect a trade secret must enforce his rights under the common law principles governing trade secrets. An equally significant line of demarcation between patents and trade secrets is that once a patent is granted, a patentee's property right in a trade secret ceases prospectively and thus, neither he nor his licensee has a right of action for wrongful appropriation of a trade secret subsequent to the date the patent is issued. *See e.g., Scharmer v. Carrollton Mfg. Co.,* 525 F.2d 95, 99 (6th Cir.1975). In short, the Court must look to U.S. patent law to determine whether plaintiff has sufficient rights in the patent to maintain an action for unlawful use and infringement.

■ It is a long standing principle of U.S. patent law that in the event of a complete assignment of title to a patent only the assignee or the assignee's exclusive licensee has standing to claim protection rights under the patent. *Waterman v. MacKenzie,* 138 U.S. 252, 256, 11 S.Ct. 334, 335, 31 L.Ed. 923 (1891); *Acme Highway Products Corp. v. Maurer,* 524 F.Supp. 1130, 1131 (D.D.C.1981); *Von Brimer v. Whirlpool Corp.,* 362 F.Supp. 1182, 1193 (N.D.Cal.1973). Thus, where an inventor-employee assigns complete title to a patent to his employer, thereby divesting himself of ownership of the patent, he no longer has a proprietary right in the patent unless

the employer-assignee in turn grants him an exclusive license. *Id. See also, Crown Die & Tool Co. v. Nye Tool & Machine Works*, 261 U.S. 24, 37, 43 S.Ct. 254, 257, 67 L.Ed. 516 (1923). It is clear from the undisputed record in this case that plaintiff and his co-inventors assigned their title to Western Electric. It is equally certain that plaintiff's royalty-exempt license in the patent is not an exclusive license as it does not "serve to exclude" Western Electric, the owner assignee of the patent, from the manufacture, use, or sale of the subject invention. *See e.g., Rail-Trailer Co. v. ACF Industries, Inc.*, 358 F.2d 15, 16–17 (7th Cir.1966). As a result, plaintiff has no proprietary right in Patent No. 3,183,063 and therefore no standing to maintain suit with respect to this patent. Accordingly, defendants GE, Leictron, IDA, and Ireland are entitled to judgment as a matter of law on the patent claims of plaintiff embodied in counts three and four of the complaint.

Trade Secrets Claim

The essence of plaintiff's wrongful appropriation claim is that defendants GE and Leictron misappropriated trade secrets he allegedly possesses in the manufacturing of quartz crystal. The facts material to plaintiff's trade secret claim are also undisputed. Plaintiff, a mechanical engineer in sodium carbonate technology, is one of nine or ten quartz crystal growers in the United States. Of these nine or ten growers, just three individuals, in addition to plaintiff, are capable of independently developing a quartz growing process. With respect to the process of cutting grown crystals, the uncontroverted record shows that when plaintiff began the venture in Ireland, there were less than seventy-five people worldwide who could properly and successfully cut quartz crystals. None of these individuals was in Ireland at that time. Finally, based upon the undisputed evidence there were no more than one hundred quartz crystal finishing companies

throughout the world and none of these companies was in Ireland in 1973. Thus, the question the Court must now address is whether plaintiff's information regarding the growing, cutting, and finishing of quartz crystal constitutes trade secrets.

In determining whether plaintiff possesses any trade secrets in the processes of quartz crystals, the Court must look to common law as there is no federal statutory or common law governing trade secrets. *See e.g., Rohm and Haas Co. v. Adco Chemical Co.*, 689 F.2d 424, 428 (3d Cir.1982) (district court erred in applying "federal" trade secret law). Moreover, since plaintiff's claim for misappropriation of trade secrets has contact with more than one jurisdiction, it is incumbent upon this Court to follow the choice of law rules of the District of Columbia ** *See Rohm and Haas Co.*, 689 F.2d at 429; *A.H. Emery Co. v. Marcan Products Corp.*, 268 F.Supp. 289, 298 (S.D.N.Y.1967) *aff'd*, 389 F.2d 11 (2d Cir.) *cert. denied*, 393 U.S. 835, 89 S.Ct. 109, 21 L.Ed.2d 106 (1968); *Midland-Ross Corp. v. Sunbeam Equipment Corp.*, 316 F.Supp. 171, 177 (W.D.Pa.1970), *aff'd per curiam*, 435 F.2d 159 (3d Cir. 1970). It appears that under D.C. choice of law analysis the Republic of Ireland may have the most significant contact with plaintiff's trade secret claim as the defendants are the Republic of Ireland and its instrumentalities. Moreover, Ireland is the place where the alleged misappropriation occurred. However, this Court is not obligated to apply the law of Ireland since none of the parties to this action gave written notice of an intent to raise the issue of Ireland's trade secret law. *See F.R.C.P. Rule 44.1; Commercial Insurance Co. of Newark, New Jersey v. Pacific-Peru Construction*, 558 F.2d 948, 952 (9th Cir.1977). Instead, the Court will apply the law of trade secrets in the United States. Specifically, the Court will look to the basic principles governing the existence of a trade

** Plaintiff is a U.S. citizen and resident of Massachusetts. Defendants are the Republic of Ireland and instrumentalities of Ireland and defendant IDA maintains an office in New York.

Thus, the states that potentially have an interest in the adjudication of this action are Massachusetts and New York as well as the Republic of Ireland.

secret as these principles are essentially the same in the relevant jurisdictions thereby rendering the choice of law question moot. *Rohm and Haas Co.,* 689 F.2d at 429; *See also, Walker v. University Books, Inc.,* 193 U.S.P.Q. 596, 603–04 (N.D. Cal.1977), *aff'd,* 602 F.2d 859, 865 (9th Cir. 1979) (similarity of trade secret law of New York and California rendered choice of law moot).

In deciding claims involving trade secrets, the courts of New York and Massachusetts have adopted the definition of trade secrets contained in the Restatement of Torts. It provides:

> A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a formula for a chemical compound, a process of manufacturing, treating or preserving materials, a pattern for a machine or other device, or a list of customers.... A trade secret is a process or device for continuous use in the operation of the business. Generally, it relates to the production of goods, as, for example, a machine or formula for the production of an article.

Restatement of Torts, § 757, Comment b (1939). *See also Rohm and Haas Company,* 689 F.2d at 431 (3d Cir.1982); *Jet Spray Cooler, Inc. v. Crampton,* 361 Mass. 835, 282 N.E.2d 921 (1972); *General Aniline & Film Corp. v. Frantz,* 50 Misc.2d 994, 272 N.Y.S.2d 600, 607–08, 151 U.S.P.Q. 136 (Sup.Ct.), *judgment modified,* 52 Misc.2d 197, 274 N.Y.S.2d 634 (1966). It is elementary that the subject of a trade secret must be secret and, thus, it must not be part of the public knowledge or of general knowledge in the trade or business involved. *See Rohm and Haas Company,* 689 F.2d at 431; *A.H. Emery Co. v. Marcan Products Corp.,* 268 F.Supp. 289, 299 (S.D.N.Y.1967), *aff'd,* 389 F.2d 11 (2d Cir. 1968) (applying New York substantive law); *Materials Development Corp. v. Atlantic Advanced Metals, Inc.,* 172 U.S.P.Q. 595, 610 ¶ 132 (Mass.Super.Ct.1971). Therefore, a trade secret " 'must be particular secrets of the complaining [party] and not general secrets of the trade in which he is engaged.' " *See Air Products and Chemicals, Inc. v. Johnson,* 296 Pa.Super. 405, 442 A.2d 1114, 215 U.S.P.Q. (BNA) 547, 553 (1982) (citing *Capital Bakers v. Townsend,* 426 Pa. 188, 231 A.2d 293, 294 (1967)). However, persons other than the proprietor of the business may know the secret without destroying the protection afforded trade secrets in the following limited circumstances: 1) the secret is communicated to employees involved in its use; 2) the secret is communicated to others pledged to secrecy; or 3) the secret is known by others by independent discovery and are keeping their discovery secret. *See* Restatement, Torts § 757 Comment b; *A.H. Emery Company* 389 F.2d 11. Nonetheless, a substantial element of secrecy must exist, so that, except by the use of improper means, there would be difficulty in acquiring the information. *Id.*

The significantly probative and uncontroverted evidence in this case substantiates that while only a small number of people in the quartz crystal industry had the requisite technical knowledge to grow, cut, and finish quartz crystal, plaintiff possessed no unique information which gave his company an economic advantage over his competitors in the industry. Indeed, there is undisputed evidence in the record that the information which plaintiff claims is entitled to trade secret protection was in the public domain at the time of the alleged misappropriation. *See* Affidavit of Brandon T. Davis (January 6, 1984). Significant numbers of books, journals, and other publications disclose the processes in the manufacture of quartz crystals for which plaintiff seeks protection. As a result, this information cannot be entitled to trade secret protection since it is in the public domain or generally available. *See Mixing Equipment Co. v. Philadelphia Gear, Inc.,* 436 F.2d 1308, 1311 n. 2 (3d Cir.1971). *Public Relations Aids, Inc. v. Wagner,* 37 A.D.2d 293, 324 N.Y.S.2d 920, 922 (1st Dept.1971); *Frederick Chusid & Co. v.*

44

*Marshall Leeman & Co.*, 279 F.Supp. 913, 917 (S.D.N.Y.1968) (applying New York substantive law). Accordingly, the motions of defendants GE, Leictron, IDA, and the Republic of Ireland for summary judgment on plaintiff's trade secret claim should likewise be granted. Nonetheless, assuming *arguendo* that plaintiff does possess a proprietary interest in Patent No. 3,183,063 and trade secrets in the manufacture of quartz crystals, summary judgment in favor of defendants Leictron, IDA, and the Republic of Ireland is still appropriate.

Personal Jurisdiction

■ As previously stated, the basis for jurisdiction in this case is the FSIA, 28 U.S.C. § 1602 *et seq.* (1982 ed.). In determining the existence of personal jurisdiction in FSIA actions, a court must make a bifurcated analysis. First, a court must determine whether personal jurisdiction exists over a defendant under FSIA and second, it must consider whether the exercise of personal jurisdiction over a defendant under FSIA is permissible under the due process clause of the Fifth Amendment. *See Gilson*, 682 F.2d at 1028; *Gibbons v. Udaras na Gaeltachta*, 549 F.Supp. 1094, 1116–17 (D.D.C.1982).

■ Under 28 U.S.C. § 1330(b), a federal district court has personal jurisdiction over a foreign state with respect to any cause of action that the court has subject matter jurisdiction pursuant to FSIA and service has been made in accordance with 28 U.S.C. § 1608. Assuming that personal jurisdiction under FSIA exists over defendants Leictron and IDA, the jurisdictional facts of this case demonstrate that the exercise of personal jurisdiction would offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

■ There are four distinct factors a court should consider to determine whether the minimum contacts test of *International Shoe* is satisfied. The Court must examine "the extent to which defendants availed themselves of the privileges of American law, the extent to which litigation in the United States would be foreseeable to them, the inconvenience to defendants of litigating in the United States, and the countervailing interests of the United States in hearing the suit." *Texas Trading & Milling Corp. v. Federal Republic of Nigeria*, 647 F.2d 300, 314 (2d Cir.1981), *cert denied*, 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982); *Gibbons*, 549 F.Supp. at 1117 (quoting *Texas Trading & Milling Corp.*, 647 F.2d at 314). Applying these principles to this case, the Court holds that an assertion of personal jurisdiction over Leictron and IDA would offend due process. Plaintiff testified in his deposition that Leictron neither used the U.S. mails nor wire communications to consult with him concerning the establishment of his quartz crystal business in Ireland. Leictron neither maintains an office in the United States nor sent one of its representatives to the United States to meet with plaintiff. Plaintiff insists, however, that Leictron is subject to personal jurisdiction since it acted as the agent of GE. This contention is without merit for even if Leictron were in fact acting as GE's agent, it is rudimentary that an agent cannot be subject to jurisdiction for the activities of its principal. *Cf. Daughtry v. Arlington County*, 490 F.Supp. 307 (D.D.C.1980); *Norair Eng'r Assocs. v. Noland Co.*, 365 F.Supp. 740 (D.D.C.1973).

■ Similarly, this Court cannot exert personal jurisdiction over defendant IDA. Although IDA has an office in New York City, the limited acts of IDA performed in the United States which have any relation to plaintiff's claims are too minuscule to form the basis for personal jurisdiction. IDA's activities in the U.S. consist of telephone conversations regarding the form and content of plaintiff's proposal for a quartz crystal business in Ireland. IDA did not meet with plaintiff, refer him to GE, nor negotiate his contract with GE. *Cf. Gibbons*, 549 F.Supp. at 1101–02, 1117 (personal jurisdiction over IDA where IDA met with plaintiffs on at least four separate occasions; referred plaintiffs to GE;

agreed to make itself, its personnel and its New York City office available to plaintiffs and GE in order to facilitate plaintiffs' and GE's negotiations and consummation of arrangements for project in Ireland).

Sovereign Immunity

 The Republic of Ireland is alleged to be liable on the ground that GE, Leictron, and IDA were acting as its agents. The Court holds that under the facts of this case the Republic of Ireland was not acting as the principal of GE, Leictron, or IDA and therefore it is not subject to suit for the alleged wrongdoing of its instrumentalities.

Under FSIA, the sovereign is not routinely subjected to suit for the acts of its instrumentalities. *See Gibbons v. Republic of Ireland*, 532 F.Supp. 668, 672 (D.D.C.1982). In determining whether a sovereign should be held liable along with its instrumentalities, the focal question is whether government officials acted in concert with employees of an instrumentality. *Gibbons*, 532 F.Supp. at 672. Plaintiff maintains that he "dealt with officials of the 'Mayo County Development Team': at [the] formative stages of his venture." Assuming that the Mayo County Development Team is a branch of the Republic of Ireland Government and that Mayo County officials acted in concert with the employees of GE, IDA, or Leictron, plaintiff's claims against Ireland are nonetheless barred by the applicable statute of limitations.

In its Opinion, the Court of Appeals determined that the relevant statute of limitations in this case bars "an action on matters arising more than three years before the complaint was filed." *Gilson*, 682 F.2d at 1024 n. 7. Plaintiff filed his original complaint on October 3, 1979. However, the most recent contact with the Mayo County Development Team occurred in March 1972, four and a half years prior to the filing of plaintiff's complaint. As this is the only alleged contact with "government" officials of the Republic of Ireland, any claim plaintiff may assert is barred by the statute of limitations. *Id.* For all the foregoing reasons set forth in this Opinion, the Court will grant the motions of defendants for summary judgment. An Order consistent with this Opinion will be entered on this date.