**Heritage Copy Products, Inc. v. Fredericks**

*Jack F. Ream, Clyde W. Vedder,* for plaintiff.
*Michael E. King, Timothy P. Ruth,* for defendants.

MILLER, *J.,* April 18, 1984—This matter is before the court on the petition of plaintiff, Heritage Copy Products, Inc., (hereinafter called Heritage) asking for injunction relief against William M. Fredericks, (hereinafter called Fredericks) and G. E. Richards, Inc. (hereinafter called Richards, Inc.).

Heritage filed a document entitled "Petition for Injunctive Relief" on March 22, 1984, as to the above number. The court refused to issue an ex parte injunction, but rather issued a rule upon defendants to show cause why a preliminary injunction should not issue. The court set a hearing on the rule for March 27, 1984. On that date, defendants appeared with counsel and filed an answer to the petition for injunctive relief. A hearing was held and testimony was presented by both plaintiff and defendants. The court thereupon issued a temporary injunction pending a further hearing to be held on April 13, 1984, and conditioned upon the filing by plaintiff of an injunction bond. The bond was filed.

On April 13, 1984, immediately prior to the continued hearing, defendants filed a motion to dissolve

the preliminary injunction and dismiss plaintiff's petition for injunctive relief on the grounds that plaintiff had violated Pa.R.C.P. 1007, incorporated by reference in Pa.R.C.P. 1501, which provides that an action may be commenced by the filing of:

(1) A praecipe for a writ of summons

(2) A complaint, or

(3) An agreement for an amicable action.

The court deferred a decision on the issue and the parties presented the remaining portion of the testimony on the issue of the granting of the preliminary injunction. On April 13, 1984, during the hearing, plaintiff filed a document entitled "Complaint," which is identical in content to the petition for injunctive relief initially filed, except for the title which labels it a complaint.

The issues before the court are as follows:

(1) Did the court have jurisdiction to entertain the petition at all; and

(2) If such jurisdiction exists, should the preliminary injunction initially entered be continued or dissolved?

The Supreme Court of Pennsylvania in the case of Hartmann v. Peterson, 438 Pa. 291, 265 A.2d 127 (1970), held that the Rules of Civil Procedure quoted above required that an equity action be commenced by complaint, summons, or amicable agreement and that failure to comply with the rules requires the trial court to dismiss the action. The court stated that in the absence of such a compliance with the rules, the trial court "has no power to make any order whatsoever, including an order allowing the filing of a complaint nunc pro tunc."

This seemingly inflexible rule has been softened, however, by the ruling by the Supreme Court in their holding in the case of In Re Tax Claim Bureau, German Township, Mt. Sterling 54½ Acres, Miscel-

laneous Buildings, 496 Pa. 46, 436 A.2d 144 (1981). There the Fayette County Tax Claim Bureau, after having discovered an error in their proceedings, filed a petition to void sale in the Court of Common Pleas of Fayette County seeking to declare the sale of two tracts of land null and void. To that petition defendants filed an answer and new matter. The Commonwealth Court held that plaintiff's action must be dismissed for the reason that "It is well established that an action may not be instituted by a petition absent specific authorization by statute." The Supreme Court, in an opinion by Justice Kauffman, on October 29, 1981, reversed the Commonwealth Court and held that the petition, while improperly titled, should not be dismissed out-of-hand. The court noted that had the action been titled complaint rather than petition it would have constituted a proper initiation of the proceeding. The court concluded that the verified petition substantially complied with the requirements of a complaint and that the opposing party filed their answer and new matter in response without objection. The court concluded that the opposing party was not prejudiced by the improper labeling of the pleading. The opinion quoted Commonwealth Court Judge Craig in his dissenting opinion, "That kind of legal doctrine is what gives the law a bad name, benefits no one, and leaves the judicial job undone." Justice Kauffman continued, "In the interest of justice, our Civil Procedure Rules must be liberally construed. Form must not be exalted over substance, and procedural errors must not be dispositive where there has been substantial compliance with the Rules and no prejudice has resulted from purely technical error." Pomerantz v. Goldstein, 479 Pa. 175, 387 A.2d 1280 (1978). The Rules of Civil Procedure are not ends in themselves but are designed to insure the

fair, orderly and expeditious administration of justice; pleading is not intended to be a game of skill in which "one misstep of counsel may be decisive to the outcome."

This case is an equity action rather than a proceeding pursuant to the Real Estate Tax Sale Law, as in Tax Claim Bureau, German Township. It is clear that the Rules of Civil Procedure clearly spell out the manner in which an action shall be commenced. However, when we look at the petition for injunctive relief with which this action was commenced, we are satisfied that in all material respects, the petition contains the essential ingredients of a complaint. It is composed of six pages divided into 21 consecutively numbered paragraphs, each of which, as far as practicable, contain only one material allegation. See Pa.R.C.P. 1021. Pursuant to Pa.R.C.P. 1019(a), the material facts upon which the cause of action is based are stated "in a concise and summary form." Moreover, the pleading clearly specifies the relief sought, as required by Pa.R.C.P. 1021. We note also that defendants filed their answer to the petition without objection until the day of the second hearing on the petition.

We recognize that a petition for a preliminary injunction is properly ancillary to a properly filed suit in equity. While we do not condone the disregarding of the Rules of Civil Procedure in the initiation of an equity action, we look to the substance of the documents filed in this matter rather than solely to the form of those documents. This is particularly so in view of the fact that the petition for injunctive relief substantially complied with and contained all of the essential elements of a complaint, contained a notice to plead, and was answered by defendants in a 10 page answer containing 21 consecutively num-

bered paragraphs. In view of the fact that plaintiff has now filed a complaint to the original term and number, the only thing that would be accomplished by dismissing the original petition would be the invitation to plaintiff to file another petition for injunctive relief to the properly filed complaint and require another hearing of the same testimony which required the better part of one day of court time. We do not believe that this is in the best interest of judicial economy, nor does it promote a respect for the judicial system.

Accordingly, we will treat plaintiff's initial pleading as a complaint and we will dismiss defendants' motion to dismiss the petition. We now turn to the question of the right of plaintiff to the continuation of the preliminary injunction issued on March 27, 1984.

Heritage is engaged in the business of selling and maintaining copying machines and the sale and distribution of supplies for copying machines in the Central Pennsylvania Region. Its Home Office is the City of York, Pennsylvania. Fredericks was employed by Heritage as a sales representative since the year 1966. His sales territory included all of Adams and Franklin Counties and a portion of York County, Pennsylvania.

Richards, Inc. is a direct competitor of Heritage in the sale, distribution and maintenance of copying machines and supplies. Its home office is in Lancaster, Pennsylvania, and until recently the area in which it operated was confined basically to Lancaster and Chester Counties.

On Friday, March 9, 1984, Fredericks submitted his resignation to Heritage, that resignation having been actually received by Heritage on Monday, March 12. On that same date, Fredericks went to work for Richards, Inc.

Fredericks had not entered into any written contract of employment with Heritage. Furthermore, Fredericks never signed, nor was he ever requested by Heritage to sign, a non-competition agreement, a non-disclosure agreement, or any agreement of any kind in connection with his employment with Heritage. Fredericks' sales territory with Richards, Inc. is essentially the same as it was with Heritage.

Heritage contends that Fredericks took with him trade secrets and that they are entitled to protection from the use of those trade secrets by Fredericks on behalf of Richards, Inc., a direct competitor of Heritage. John Richards, the president of Heritage, testified that his company has in excess of 1,000 customers in the South Central Pennsylvania area and that Heritage has developed a close relationship with its customers. He testified that the customer records contain the names, invoices, copies of leases and maintenance contracts, and other information which is confidential. These records are kept in a large walk-in safe in the Main Office. The sale is locked except during business hours. When records are no longer needed, they are destroyed by means of a paper shredder. He testified that Fredericks knew of the confidential nature of the customer records and that he made copies of certain of the lease and maintenance contracts to take with him when he left the employ of Heritage. Heritage contends that these customer records were compiled at considerable expense in time and money over a period of years and that the names and addresses of its customers, the kinds of equipment purchased or leased by those customers, and the expiration dates of the leases for the equipment, is information so secret and confidential that its use by a competitor will put that competitor at a distinct advantage in its dealings in the sales area shared with Heritage.

Fredericks, on the other hand, contends that the only information that he took with him was copies of 13 maintenance contracts with York Hospital that he obtained at the request of York Hospital, and that he either has or is willing to return to Heritage. He testified that he has obtained no confidential information or obtained any trade secrets as a result of his employment by Heritage. Both Fredericks and other witnesses called by defendants testified that the identity of Heritage's customers and the details of the equipment sales and leases to those customers was widely known to a significant number of the employees of Heritage. Fredericks testified that he had spent 17 years building up his relationship with his customers in the Central Pennsylvania Area and that he does, indeed, carry within his memory the identity of most of those customers and the type of equipment that he sold or leased to them. Both Fredericks and other witnesses called by defendants testified that the copying machine business is extremely competitive and that the sales representatives of the various competitors know the identity of the customers served by the other companies within the region, although they may not be aware of the particular equipment placed with each customer.

Pennsylvania law permits the issuance of an injunction against an employee and employer to prevent the disclosure of information obtained by the employee while in the employ of the complainant ex-employer where trade secrets exist under circumstances where the Pennsylvania Law of Unfair Competition requires that protection from disclosure be ordered. Air Products and Chemicals, Inc. v. Johnson, et al, 296 Pa. Super. 405, 442 A.2d 1114 (1982).

The prerequisites for injunctive relief in a trade secrets case are set out by the Pennsylvania Supreme Court in the case of Macbeth-Evans Glass Company v. Schnelbach, 239 Pa. 76 (1913). The court stated that the burden is on the employer to show:

"(1) That there was a trade secret.

(2) That it was of value to the employer and important in the conduct of his business.

(3) That by reason of ownership the employer had the right to use and the enjoyment of the secret.

(4) That the secret was communicated to the (employee) while he was employed in a position of trust and confidence, under such circumstances as to make it inequitable and unjust for him to disclose it to others, or to make use of it himself to the prejudice of his employer."

A trade secret has been defined as "any formula ... or compilation of information which is used in one's business, and which gives him an advantage over competitors who do not know or use it." Restatement of Torts, §757, Comment b. Furthermore, it is essential that the trade secret be the "particular secret of the complaining employer and not general secrets of the trade." Capital Bakers v. Township, 426 Pa. 188, 231 A.2d 292 (1967). Matters of general knowledge in the industry do not qualify as trade secrets. The Restatement of Torts, §757, provides a number of factors to be considered in determining whether certain information is one's trade secret or whether it fails to qualify as such. These factors were recently applied by the Pennsylvania Superior Court in the case of Computer Print Systems, Inc. v. Lewis, 281 Pa. Super. 240, 422 A.2d 148 (1980). The factors are:

"(1) The extent to which the information is known outside of his business.

(2) The extent to which it is known by employees and others involved in his business.

(3) The extent of measures taken by him to guard the secrecy of the information.

(4) The value of the information to him and his competitors.

(5) The amount of money or effort expended by him in developing the information.

(6) The ease or difficulty with which the information could be properly acquired or duplicated by others."

We have reviewed the evidence and the testimony in light of the factors suggested by §757 of the Restatement of Torts and quoted in Computer Print Systems and conclude that Heritage has not proved that the information contained· in its customer records constitute trade secrets of the type which entitle it to protection from disclosure.

It is true, as Heritage contends, that customer lists and customer information may constitute a trade secret of the kind entitled to protection. In Morgan's Home Equipment Corp. v. Matucci, 390 Pa. 618, 136 A.2d 838 (1957), the Pennsylvania Supreme Court discussed the issue of customer lists qualifying as trade secrets. The court said:

"In many businesses, permanent and exclusive relationships are established between customers and salesmen. The customer lists and customer information which have been compiled by such firms represent a material investment of employer's time and money. This information is highly confidential and constitutes a valuable asset. Such data has been held to be property in the nature of a 'trade secret' for which an employer is entitled to protection, independent of a non-disclosure contract, either under the law of agency or under the law of unfair trade practices."

We are satisfied that the customer information of Heritage does not constitute a trade secret under the standards of the Restatement of Torts, Computer Print Systems, or Morgan's Home Equipment Corp.

It appears that Heritage maintained a computer print-out of customers' names and addresses, copies of sales and maintenance contracts and leases, together with the expiration dates of those contracts and leases.

We are satisfied that those documents do not meet the Restatement test for a "trade secret." The identity of Heritage's customers is well-known throughout the local copying products industry and is well-known among a substantial portion of Heritage's employees. It appears that Heritage maintains no written policy with respect to the use or dissemination. Nor has Heritage sought to have any of its employees enter into written employment contracts containing covenants against competition or disclosure. While we are sure that Heritage has expended considerable cost and effort to develop relationships with its customers, that alone does not render the information gathered by Fredericks during his years of employment with the company secret and confidential. Defendants' witnesses, some of whom are direct competitors of both Heritage and Richards, Inc., testified that it is not difficult to ascertain the customers of a competitor by simply walking into a place of business and asking the type of copying equipment used in the business and inquiring as to whether the customer is satisfied with that equipment. We conclude that Heritage's customer information, while valuable to it, does not constitute a trade secret of the type which entitles Heritage to protection from Fredericks and Richards, Inc.

In the case of Spring Steels, Inc. v. Molloy, 400 Pa. 354, 162 A.2d 370 (1960), Justice Musmanno, writing for a unanimous Supreme Court, held that where a former employer did not have written employment contracts, employees were free to leave, form a competing company, and actively solicit the former employer's customers using customer lists which were not trade secrets. The court stated, at page 363:

"Nor is the fact that the new company may acquire some of the plaintiff's former customers contrary to law. It is not a phenomenal thing in American business life to see an employee, after a long period of service, leave his employment and start a business of his own or an association with others. And it is inevitable in such a situation, where the former employee has dealt with customers on a personal basis, that some of these customers will want to continue to deal with him in his new association. This is so natural, logical and part of human fellowship, that an employer who fears this kind of future competition must protect himself by a preventive contract with his employee, unless of course there develops a confidential relationship which of itself speaks for non-disclosure and non-competition in the event the employer and employee separate. There is nothing of this in this case."

We are satisfied that there is "nothing of that" in this case.

Accordingly, we are satisfied that the preliminary injunction previously issued must be dissolved. We therefore, enter the following

## ORDER

And now, this April 18, 1984, the preliminary injnction issued by this court on March 27, 1984, is dissolved.

404

The prothonotary is directed to provide notice of the entry of this opinion and order as required by law.